UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 2:05-cr-20014-02 |
| | * | |
| | * | |
| VERSUS | * | |
| | * | |
| | * | JUDGE CAIN |
| CHRISTIAN SENECA FIELDS | * | MAGISTRATE JUDGE KAY |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The defendant, an inmate currently incarcerated at Fort Worth FMC, seeks compassionate release based on his assertion that his diagnosis of sarcoidosis and the prescription medication prednisone make him particularly vulnerable to becoming seriously ill from COVID-19 should he contract the disease in prison. For the reasons set forth below, this Court should deny that motion.

### RELEVANT BACKGROUND

A grand jury in the Western District of Louisiana charged the defendant, Christian Seneca Fields ("Fields"), in a nine-count Indictment on January 12, 2005 for narcotics and firearm offenses. Count One charged Fields with conspiracy to distribute over fifty grams of crack cocaine, and Count Six charged Fields with possession of a firearm in the furtherance of a drug trafficking crime. On November 4, 2010, Fields pled guilty to Counts One and Six of the Indictment, and Fields also admitted to previous convictions enhancing Fields's sentencing range pursuant to 21 U.S.C. § 851.

1

On March 3, 2011, the Court sentenced Fields to 300 months of incarceration, consecutive sentences of 240 months on Count One and 60 months on Count Six. *See* Doc. No. 191. On July 25, 2013, following a remand for re-sentencing pursuant to the Fair Sentencing Act, the Court amended its prior sentence and imposed a sentence of 180 months of incarceration, consecutive sentences of 120 months on Count One and 60 months on Count Six. *See* Doc. No. 220. According to inmate locator, Fields's release date is September 12, 2023, leaving approximately 38 months remaining on his 180 month sentence.

On April 14, 2020, Bureau of Prisons ("BOP") received Fields's request for compassionate release. In that request, Fields requested to be immediately released due to COVID-19 vulnerabilities. *See* Doc. No. 286-1, at 1. On April 21, 2020, BOP denied Fields's request for release finding that Fields did not meet the criteria for compassionate release. *Id*. In its decision, BOP cited that Fields "scored out as a High Risk of recidivism" and that Fields had an incident report for possession of a cell phone within the last twelve months. *Id.*

## LAW AND ARGUMENT

**I.  The defendant is not a suitable candidate for compassionate release, so his motion should be denied.**

"[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010) (cleaned up). Consistent with that principle of finality, 18 U.S.C. § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except

2

in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such as that presented by the defendant; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

Relevant here, under § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with guideline policy statements. Under the statute as amended by the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. In this case, the defendant exhausted his administrative remedies by filing his request for administrative remedy, and BOP denied that request on April 21, 2020. *See* Doc. No. at 268-1.

Section 3582(c)(1)(A) provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Here, the applicable policy statement, U.S.S.G. § 1B1.13, provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or the

community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement."[1] U.S.S.G. § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (1) suffering from a serious physical or medical condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical or mental health because of the aging process, any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets forth other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239. In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

With regard to the last consideration relating to "extraordinary and compelling reasons" identified by the Director, BOP has issued a regulation defining its own consideration of compassionate release requests. *See* BOP Program Statement 5050.50.[2] This program statement was amended effective January 17, 2019, following the First Step Act's passage. It sets forth in detail BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances.[3]

In his motion, the defendant asserts he is entitled to compassionate release because he suffers from sarcoidosis and takes the prescription medication prednisone. His medical ailment, sarcoidosis, is of a type that can be controlled and does not present any impediment to his ability to provide self-care in the institution. *See e.g., United States v. Maher*, 2020 WL 390884, at *2 (Jan. 22, 2020) (denying compassionate release to a defendant whose medical records showed "a history of Crohn's disease, prostate cancer, and hepatitis C, as well as significant unexplained

---

[2] Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf .

[3] To the extent the defendant implies the policy statement is only advisory, that is incorrect. The policy statement is binding under the express terms of § 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States*, 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory. *See Dillon v. United States*, 560 U.S. 817, 830 (2010) (making clear that the statutory requirement in § 3582 that a court heed the restrictions stated by the Sentencing Commission is binding).

weight loss, bacterial pneumonia, and acute exacerbation of bronchiectasis" on the ground that the records did not show his inability to care for himself) ; *United States v. Lynn*, 2019 WL 3082202, at *2 (S.D. Ala. July 15, 2019) (denying compassionate release for a defendant who complained of chronic kidney failure, atrial fibrillation, 70% blockage in multiple coronary arteries, high cholesterol, cervical disc degeneration, enlarged prostate, and other ailments, as none of those conditions was terminal, or substantially diminished his ability to provide self-care within the environment of a correctional facility); *United States v. Bunnell*, 2019 WL 6114599 (D. Ariz. Nov. 18, 2019) (denying compassionate release even though the defendant had "serious medical issues" including "arthritis, sciatica, bulging lumbar discs 2-5, scoliosis, and degenerative disease causing central stenosis in his spine" and was confined to a wheelchair, as none of these was a terminal illness or substantially diminished his ability to provide self-care). The government acknowledges that Fields's medical records document his diagnosis and treatment for sarcoidosis, and the medical records show that BOP's treatment plan has successfully treated his condition. But for COVID-19, Fields would not qualify for compassionate release because Fields condition—absent conditions created by COVID-19—does not substantially affects Fields' ability to provide self-care within the correctional facility.

The only question, then, is whether the risk of COVID-19 changes that assessment. The United States acknowledges that the defendant presents a risk factor identified by the CDC as heightening the risk of severe injury or death were

6

the inmate to contract COVID-19, namely sarcoidosis.[4]  The United States agrees that this chronic condition presents "a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" as stated in § 1B1.13, cmt. n. 1(A)(ii), in that at this time, his ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished within the environment of a correctional facility by the chronic condition itself.[5]

Nonetheless, even if Fields's ability to provide self-care against serious injury or death is substantially diminished within the environment of a correctional facility by his health condition due to the COVID-19 pandemic, the defendant is not entitled to relief. This Court must consider all pertinent circumstances, including the § 3553(a) factors, and possible danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring consideration of the § 3553(a) factors "as applicable") and U.S.S.G. § 1B1.13(2) (requiring consideration of whether the defendant is "a danger to the safety of any other person or to the community, as provided in 19 U.S.C. § 3142(g)"); *see also*, *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming the denial of compassionate release where the district court properly relied on the fact that an inmate suffering from terminal cancer had a violent criminal history, had committed a violent offense, and had served less than half the sentence imposed); *United States*

---

[4] *See* Centers for Disease Control, Groups at Higher Risk for Severe Illness, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.
[5] Accordingly, as the government concedes that he meets the threshold test of a medical condition defined in note 1(A), this Court need not consider whether the defendant's condition falls under the "catch-all" provision of note 1(D).

7

*v. Watson*, 2020 WL 1890541, at *3 (N.D. Okla. Apr. 16, 2020) (finding the defendant was not eligible for compassionate release because he poses a danger to the community in light of the offense of conviction (six armed robberies), his lengthy criminal history as set forth in the PSR, and his various disciplinary infractions in prison, which "contradict[ ] his claims that imprisonment has changed him," and the fact that even under current law, he would face a substantial sentence of 42 years on certain firearms charges alone, and he had served only "a small fraction" of the sentence originally imposed by the court ).

At present, the defendant's medical condition is appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19, and which would also act to treat any inmate who does contract COVID-19.[6] *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting BOP's "extensive and professional efforts to curtail the virus's spread."). This is in contrast to the defendant's proposed release plan, which insures neither the safety of the community nor the defendant because the defendant's motion only references Fields's plan to have health insurance coverage through his "friend Alana Haywood." *See* Doc. No. 268-1, at 3. *See United States v. Feiling*, 2020 WL 1821457, at *8 (Apr. 10,

---

[6] Indeed, BOP has been planning for potential COVID-19 transmissions since January 2020, establishing a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, informed by guidance from the World Health Organization. BOP's plans to minimize the risk of COVID-19 transmission into and inside its facilities comprises several preventive and mitigation measures, including the screening of inmates and staff; limiting contractor access; suspension of social and legal visits; restrictions on inmate movements inside and between BOP facilities; and modified operations. BOP's adaptations to the ongoing crisis are continuous; it is currently operating under Phase VII of its COVID-19 response plan. *See* https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp.

2020) (noting that releasing the defendant to his home "presents its own risks to Defendant's health, the health of his family and public safety," including risks posed to his wife, who is also elderly and has health problems, or to his children, who would have to travel across state lines to attend to him).

But aside from all of the above, this Court should deny the defendant's motion because he has not demonstrated that he will not pose a danger to the community if released, or that his release comports with the applicable § 3553(a) factors. In denying his request for compassionate release, BOP cited that Fields "scored out as a High Risk of recidivism." *See* Doc. No. 268-1, at 1. Additionally, BOP cited Fields's disciplinary record in its denial noting that Fields had "an incident report for possession of a cell phone within the last 12 months." *Id*. Moreover, Fields' crimes—conspiracy to distribute narcotics and possession of a firearm during a drug trafficking crime—are serious offenses; these offenses carry a presumption in favor of detention pursuant to the Bail Reform Act. *See* 18 U.S.C. § 3142. Fields also has a significant criminal history; prior to his federal conviction, the presentence investigation report noted prior offenses for possession of cocaine in 2000, possession of marijuana and evading arrest in 2002, unlawfully carrying a weapon and possession of CDS in 2003, possession of cocaine in 2004, and evading arrest in 2004. These prior convictions scored Fields 8 criminal history points yielding a criminal history category IV according to the presentence investigation report. For these reasons, BOP found Fields to be a poor candidate for compassionate release, and BOP denied his request.

9

Fields has not demonstrated that he will not pose a danger to the community if released, or that his release comports with the applicable § 3553(a) factors. Therefore, his motion should be denied.

## CONCLUSION

The defendant's motion for compassionate release should be denied on the merits.

Respectfully submitted,

DAVID C. JOSEPH
UNITED STATES ATTORNEY


*s/ Robert C. Abendroth*
ROBERT C. ABENDROTH
Assistant United States Attorney
