UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.  2:05-CR-20014-02** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHRISTIAN SENECA FIELDS (02)** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM ORDER**

Before the Court is a "Compassionate Release: Emergency Motion for Extraordinary and Compelling Reasons Pursuant to 18 U.S.C. § 3582(c)(1)(A) and COVID-19 Pandemic" (Rec. 258) wherein Defendant Christian Seneca Fields seeks an early release due "probable catastrophic health consequences."[1]

Mr. Fields through his counsel,[2] asserts that he has a debilitating respiratory illness—Sarcoidosis[3] which directly affects his breathing.  He informs the Court that he has approximately 38 months remaining on his 180-month term of imprisonment for conspiracy to possess methamphetamine with intent to distribute and possession of a firearm during and in relation to a drug trafficking crime. After release, Mr. Fields will be on 10 years of supervised release. Mr. Fields is an inmate at Fort Worth FMC[4] and is scheduled for release on September 12, 2023. Counsel for Mr. Fields has satisfied the Court that Mr. Fields has exhausted his administrative remedies with the Bureau of Prisons ("BOP").

---

[1] Rec. 258, p.1.
[2] Mr. Wayne Blanchard of the Federal Public Defenders Office enrolled as counsel. Recs. 260 and 262.
[3] Sarcoidosis is a disease characterized by the growth of tiny collections of inflammatory cells (granulomas) in any part of your body—most commonly the lungs and lymph nodes. But it can also affect the eyes, skin, heart and other organs. . . . There is no cure for sarcoidosis, but most people do very well with no treatment or only modest treatment.  In some cases, sarcoidosis goes away on its own.  However, sarcoidosis may last for years and may cause organ damage. Sarcoidosis most often affects the lungs and may cause lung problems, such as, persistent dry cough, shortness of breath, wheezing, and chest pain. mayoclinic.org.
[4] This correctional facility is a medical center.

Mr. Fields is 37 years old[5]; his medical records reflect that in mid-2018, he was diagnosed with lung Sarcoidosis and is currently being prescribed prednisone. Mr. Fields informs the Court that there are reports concerning COVID-19 which indicate that it is a respiratory virus; consequently, Mr. Fields asserts he is affected by a pre-existing condition. In addition, Mr. Fields asserts that his prescribed medication, prednisone, suppresses his immune system. Finally, Mr. Fields mentions that the facility where he is incarcerated limits his ability to practice "social distancing." Mr. Fields argues that his diagnosis and prescription medication makes him particularly vulnerable to becoming seriously ill from COVID-19 should he contract the disease in prison.

The Government opposes Mr. Fields' early release. The Government notes that Mr. Fields was charged in a nine count Indictment by a grand jury for narcotics and firearm offenses. Count One charged him with conspiracy to distribute over fifty grams of crack cocaine and Count Six charged Mr. Fields with possession of a firearm in the furtherance of a drug trafficking crime. He pled guilty and admitted to previous convictions which enhanced his sentencing range.

Mr. Fields was originally sentenced to 300 months of incarceration.[6] Pursuant to the Fair Sentencing Act, the Court amended its prior sentence and imposed a sentence of 180 months of incarceration.[7] The BOP denied Mr. Fields' request for compassionate release finding that he did not meet the criteria. Specifically, the BOP found that Mr. Fields "scored out as a High Risk of recidivism" and that he had an incident report for possession of a cell phone within the last twelve months.[8]

---

[5] His date of birth is 6/18/1982. Rec. 268-2.
[6] Consecutive sentences of 240 months on Count 1 and 60 months on Count 6.
[7] Consecutive sentences of 120 months on Count 1 and 60 months on Count 6. Rec. 220.
[8] Rec. 286-1.

A judgment, including a sentence of imprisonment, "may not be modified by a district court except in limited circumstances." *Dillon v. United States,* 560 U.S. 817, 825 (2010). Under 18 U.S.C. 3582(c), a court generally may not modify a term of imprisonment once it has been imposed, except in three circumstances; (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A); (2) to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

Section 3852(c)(1)(A) permits a court to reduce a prisoner's sentence "if he finds that" (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

Prior to 2018, only the Director of the BOP could file these kinds of compassionate release motions. In 2018, Congress passed, and President Trump signed the First Step Act, which among other actions, amended the compassionate release process. Under the First Step Act, § 3582(c)(1)(A) now allows prisoners to directly petition courts for compassionate release.

Section 3582(c)(1)(A) provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C, § 3582(c)(1)(A). Here, the applicable policy statement, U.S.S.G. § 1B1.13, provides that a court may reduce the term of imprisonment after considering the § 3553(1) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a

danger to the safety of any other person or the community, as provided in 18 US.C. § 3142(g); and (iii) "the reduction is consistent with this policy statement."[9] U.S.S.G. § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (1) suffering from a serious physical or medical condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical mental health because of the aging process, any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).

The application note also sets forth other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that the BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

The BOP has issued a regulation to define its own consideration of compassionate release requests. See BOP Program Statement 5050.50.[10] This Program Statement was

---

[9] The policy statement refers only to motions filed by the BOP director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). See first Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239. In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 35829c)(2)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

[10] Available at https://www.bop.gov/policy/progstat/5050_50EN.pdf .

amended effective January 17, 2019, following the First Step Act's passage. It sets forth in detail the BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances. The policy statement is binding under the express terms of § 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States,* 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory. See *Dillon v. United States*, 560 U.S. 817, 830 (2010) (making clear that the statutory requirement in § 3582 that a court heed the restrictions stated by the Sentencing Commission is binding).

The Government argues that Mr. Fields' diagnosis of Sarcoidosis for which he takes prednisone is of a type that can be controlled and does not present any impediment to his ability to provide self-care in the institution. See e.g. *United States v. Maher,* 2020 WL 390884, at *2 (Jan. 22, 2020) (denying compassionate release to a defendant whose medical records showed "a history of Crohn's disease, prostate cancer, and hepatitis C, as well as significant unexplained weight loss, bacterial pneumonia, and acute exacerbation of bronchiectasis" on the ground that the records did not show his inability to care for himself.); *United States v. Lynn,* 2019 WL 3082202, at *2 (S.D.Ala. July 15, 2019) (denying compassionate release for a defendant who complained of chronic kidney failure, atrial fibrillation, 70% blockage in multiple coronary arteries, high cholesterol, cervical disc degeneration, enlarged prostrate, and other ailments, as none of those conditions was terminal, or substantially diminished his ability to provide self-care within the environment of a correctional facility); *United States v. Bunnell,* 2019 WL 6114599 (D.Ariz. Nov. 18, 2019) ( denying compassionate release even though the defendant had "serious medical issues" including "arthritis, sciatica, bulging lumbar discs 2-5 scoliosis, and degenerative disease causing

central stenosis in his spine" and was confined to a wheelchair, as none of these was a terminal illness or substantially diminished his ability to provide self-care). The Court notes that all of these cases are "pre-COVID19 era" cases.

The Government acknowledges Mr. Fields' medical records and diagnosis, but also notes that the BOP's treatment plan has successfully treated his condition. The Government also agrees the Mr. Fields' chronic medical condition presents "a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." In other words, Mr. Fields' ability to provide self-care against serious injury or death *as a result of COVID-19* is substantially diminished within the environment of a correctional facility by the chronic condition itself. The question for this Court to determine is whether or not the issues related to the COVID-19 present a risk factor identified by the CDC[11] as heightening the risk of severe injury or death were the inmate to contract COVID-19.

Counsel for Mr. Fields informs the Court that if and when released, Mr. Fields will be residing with his aunt who is 51 years old and lives in Houston, Texas. He also informs the Court that prior to being transferred to Ft. Worth FMC, Mr. Fields was incarcerated in at a low security facility at FCC in Beaumont, Texas. The Court finds that Mr. Fields' chronic condition does heighten his risk of severe injury or death were he to contract COVID19.

Pursuant to Section 3852(c)(1)(A) and considering the relevant factors set forth herein, specifically the seriousness of Mr. Fields ailment, his prescribed medications, along with his ability to reside with a family member, and the issues related to the COVID-19 regarding housing

---

[11] Centers for Disease Control.

at the prison,[12] the Court finds that the Motion for Compassionate Release should be granted and that Mr. Field's sentence should be reduced to time served. Accordingly,

**IT IS ORDERED** that the Motion for Compassionate Release is **GRANTED;** the Court will issue a separate Amended Judgment to that effect.

**THUS DONE AND SIGNED** in Chambers on this 11th day of June, 2020.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**

---

[12] The Court also considered counsel's argument that prior to being transferred to Ft. Worth FCC, Mr. Fields was incarcerated at a low security camp—FCC in Beaumont, Texas.